**NOT FOR PUBLICATION**                                                                                [30]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
                                                    :
DANIEL JOHNSON                          :          Civil Action No. 03-cv-3126 (FLW)
                            Plaintiff,      :
            v.                                     :
                                                    :
BALLY'S ATLANTIC CITY,            :          **OPINION**
                            Defendant.   :
_____:

**WOLFSON, District Judge**

       Presently before the Court is a Motion for Summary Judgment by Defendant, Bally's Atlantic City ("Bally's"), on the Complaint of Plaintiff, pro se, Daniel Johnson ("Johnson"). Plaintiff, an African-American male, alleges that he was unlawfully discharged by Defendant on the basis of his race and in retaliation for filing complaints with Defendant's Labor Relations Department in violation of Title VII of the Civil Rights Act of 1964. The Court has considered the moving, opposition and reply papers; for the reasons that follow, the Court holds that Defendant's Motion is granted in part and denied in part.

**I. Background**

       Plaintiff was hired on April 11, 2000, as a part-time dealer at Bally's Hotel and Casino in Atlantic City, New Jersey. Plaintiff was discharged on October 18, 2002. Plaintiff alleges that during his employment, he was harassed by his supervisors and subject to racist comments by

1

casino customers. Specifically, Plaintiff contends that between May 24, 2002 and September 27, 2002, the following events occurred: (1) a supervisor tried to walk into him; (2) a supervisor used a cleaning person to push a cart into him; (3) supervisors sent casino patrons to his game table to call him "monkey"; (4) unidentified individuals were going into his locker and taking things off his key chain; (5) unidentified individuals changed the ring on his cell phone; and (6) unidentified security personnel had a woman walk into him in order to provoke him. Plaintiff's Statement of Material Facts ("Pl's Fact Statement") at ¶ 5. In addition, Plaintiff alleges that on two separate occasions he was subject to unwanted touching by a dealer and a supervisor. Id. at ¶ 7.

As a result of these events, Plaintiff filed five complaints with Bally's Labor Relations Department. In response, Patricia Fineran ("Fineran"), Bally's Director of Labor Relations, met with Plaintiff on June 3, 2002 and began investigating Plaintiff's allegations. Each time Plaintiff filed a new complaint about his work situation, the allegations were investigated and Fineran interviewed the various individuals whom Plaintiff identified as the party responsible for each action or comment. According to Fineran, the investigation revealed no evidence that any individual acted inappropriately towards Plaintiff, and Fineran eventually determined that Plaintiff's allegations could not be substantiated and "remained inconclusive." Birchmeier Cert., Ex. F.

Subsequently, on October 16 and 17, 2002, Frank Campbell ("Campbell"), another dealer at Bally's, filed complaints with Bally's alleging that Plaintiff verbally threatened him on two separate occasions. As a result of Campbell's complaints, Plaintiff was suspended on October 17, 2002 pending an investigation, Birchmeier Cert. Ex. I, and discharged for misconduct on

2

October 18, 2002, the following day. Birchmeier Cert, Ex. J.

Thereafter, Plaintiff appealed his termination, and on January 3, 2003, a Board of Appeals met to review his termination. Following a hearing, the Board upheld Plaintiff's termination. On July 1, 2003, Plaintiff filed a Complaint in the District Court of New Jersey. On August 26, 2004, Bally's filed a Motion for Summary Judgment, which was granted by this Court on December 20, 2004. Plaintiff subsequently appealed to the U.S. Court of Appeals for the Third Circuit which vacated this Court's Order and reopened the case for further proceedings. Thereafter, on December 12, 2005, Bally's filed the instant Motion for Summary Judgment.

**II. Legal Standard**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To show that a genuine issue of material fact exists, the nonmoving party may not rest upon mere allegations, but must present actual evidence in support thereof. Id. at 249 (citing First Nat'l Bank of Arizona v. Cities Svc. Co., 391 U.S. 253, 290 (1968)). In evaluating the evidence, the Court must view evidence and draw inferences "in the light most favorable to the party opposing the motion." Waldorf v. Shuta, 896 F.2d 723, 728 (3d Cir. 1990) (quoting Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

**III. Discussion**

1. Hostile Work Environment

To establish a claim for employment discrimination due to an intimidating or offensive work environment, a plaintiff must establish, "by totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996); Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990). The Third Circuit has articulated five factors that must be established in order to prove the existence of an actionable hostile work environment. Specifically, plaintiff must prove: (1) that he suffered intentional discrimination because of his race or sex; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected him; (4) that the discrimination would detrimentally affect a reasonable person of the same race or sex in that position; and (5) the existence of respondeat superior liability. Aman, 85 F.3d at 1081; Andrews, 895 F.2d at 1482. Courts have emphasized that a determination of whether an environment is hostile or abusive can only be made by looking at the totality of the circumstances including, but not limited to, the frequency of the discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Aman, 85 F.3d at 1081.

Reduced to its most basic components, an actionable hostile work environment requires proof that Plaintiff was subjected to a level of gender or race-based harassment which was "severe or pervasive" enough to create a working environment which is both subjectively and

objectively abusive or hostile to female or African American employees. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)(analyzing hostile work environment claim based on sexual harassment); National Railroad Passenger Corp. v. Morgan, 536 U.S.101, 116 n. 10 (2002) (observing that hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment."). However, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not " suffice. Faragher v. City of Boca Raton, 524 U.S. 775, 88 (1998). Moreover, "[v]erbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender (or membership in other protected groups)." Koschoff v. Henderson, 109 F.Supp. 2d 332, 346 (E.D.Pa.2000)(citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).

In the instant matter, Plaintiff alleges that the conduct he was subjected to was sufficiently severe and persuasive to establish a hostile work environment. Specifically, Plaintiff contends that he was forced to work at casino tables where patrons used the word "monkey" despite his complaints to management that this was a racial slur. In addition, Plaintiff contends that he was subject to unwanted touching solely because of his race[1]. Pl's Rep. Br. at 8. As a result of the stress of these events, Plaintiff alleges that he had to miss three weeks of work.

Defendant, on the other hand, argues that Plaintiff has not established an issue of fact sufficient to withstand this Motion for Summary Judgment. Specifically, Defendant contends

---

[1]The Court noes that Plaintiff additionally alleged that someone changed the ring on his phone and that someone broke into his locker. Pl's. Fact Statement at ¶ 5. However, Plaintiff has not explicated these charges nor has he alleged that these actions were perpetrated against him because of his race. Thus, these claims stand as bare allegations which are insufficient to withstand the motion for summary judgment.

that Plaintiff has not put forth any evidence to support his assertion that the conduct complained of occurred because of his race. In addition, Defendant argues that Plaintiff has not established that the use of the word "mon-ke" was intended as a racial slur, nor has he established that non-African American dealers would not have been treated in the same manner. See Aman, 85 F.3d at 1083.  The Court agrees.

To begin, the Court notes that many Third Circuit cases have discussed the level of activity needed to sustain a claim for a hostile work environment. In Cardenas v. Massey, for example, the Third Circuit determined that the conduct was severe and pervasive enough to constitute a hostile work environment where defendants: (1) subjected plaintiff to ethnic slurs; (2) dealt with disagreements by asking if plaintiff intended to pull out a switchblade; (3) wrote derogatory messages on the board in plaintiff's cubicle; (3) rounded the numbers on all other employee evaluations upward while rounding plaintiff's evaluation numbers downward; (4) disproportionately assigned minorities to plaintiff's unit; (5) gave plaintiff contradictory instructions and assignments; and (6) spread a rumor that Plaintiff was an affirmative action hire. 269 F.3d 251, 258-259, 262 (3d Cir. 2001).  Similarly, in Aman, the Court found that plaintiffs had established a hostile work environment where African-American employees were (1) referred to as "one of them" or "another one"; (2) told not to touch or steal anything; (3) forced to do menial jobs; (4) screamed at; (5) threatened with termination; (5) falsely accused of wrongdoing; and (6) given conflicting orders and told that "the blacks were against the whites." Id. 85 F.3d at 1082-83.

In the instant matter, viewing all facts and reasonable inferences in a light most favorable to Plaintiff, I find that the Plaintiff has failed to produce evidence beyond his bare allegations to

6

create a sufficient issue of material fact on the claim of race-based harassment. Here, Plaintiff alleges, inter alia, that Bally's management staff bumped into him and touched him because of his race in order to provoke a reaction which they could use to fire him. However, Plaintiff has not put forth any evidence, other than these bare allegations, that Defendant's conduct was related to Plaintiff's race. Thus, this conduct standing alone cannot establish that Plaintiff was subject to a hostile work environment based on his race.

In addition, Plaintiff alleges that he was forced to work at casino tables where clients used the word "monkey" as a racial slur. Defendants, however, suggest that this term is used by blackjack players to request cards with a value of 10. Def.'s Br. at 9. Indeed, the Court notes that Plaintiff has conceded that the term "mon-ke" has a specific race-neutral definition within the context of the gambling industry. Specifically, the following exchange occurred during Plaintiff's deposition:

> Q: Now, in the casino industry, does the term monkey have any other type of definition other than it being a racial slur?
>
> A: Yes, it has a definition. Well, it's an Asian word which means ten...

Birchmeier Cert. Ex. O, Johnson Dep. 64:6.

Moreover, Plaintiff testified, "I just happened not to like the fact that they used the word monkey at their blackjack tables. . . You know, a lot of people that work in the casino industry, they understand. . .what they are doing when they are saying monkey. When they are yelling it

7

aloud, a lot of people understand that phrase, but then there is a lot of people that are not familiar with the casinos. . .maybe, their first time, they see this black man standing up at the blackjack table and hear a white person and an Asian person standing up there saying, 'Come on monkey, monkey 10, come on big monkey,' to me, that's degrading." Johnson Dep. 62-63.

In Aman, the Third Circuit required plaintiff to show that race was a substantial factor in the harassment and that if Plaintiff had been white, she would not have been treated in the same manner.  See Aman, 85 F.3d at 1083; Hargrave v. County of Atlantic, 262 F.Supp. 2d 393, 412 (D.N.J. 2003).   In the instant matter, not only did Plaintiff concede that the word "mon-ke" has a race-neutral definition when it is used in the context of the gambling industry, but Plaintiff has not established that race was a substantial factor in casino patrons' use of this term.  For example, Plaintiff has not presented evidence in opposition to the motion that casino patrons did not use this term in front of all of the dealers regardless of their race.  Thus, Plaintiff has not established that this word was used because he is African-American nor has he demonstrated that he was treated differently because of his race.  Thus, although Plaintiff may find the use of this word degrading, the evidence does not establish that casino customers' use of the word "mon-ke" constituted a hostile work environment.  In light of the record and Plaintiff's testimony, Plaintiff has not established an issue of fact on the question of whether he was subject to intentional discrimination under a hostile work environment analysis.

However, even if Plaintiff could succeed in establishing intentional discrimination under the first prong of Aman, the Court finds that on this record, Plaintiff can not succeed in

8

establishing an issue of material fact on the remaining prongs of the test[2]. For example, Plaintiff has not established an issue of fact on the objective effect of discrimination under the fourth prong of Aman.  "The objective standard protects the employer from the 'hypersensitive ' employee, but still serves the goal of equal opportunity by removing the walls of discrimination that deprive . . .[members of a protected group] of self-respecting employment." Andrews v. City of Philadelphia, 895 F.2d 1469, 1483 (3d Cir. 1990).  Viewing the totality of the circumstances, this Court finds no evidence or issue of material fact that the conduct complained of was so objectively offensive as to create an abusive working environment.  Although Plaintiff contends that he has spoken to other African-Americans who agree that they would not like to "stand up at a table with white people saying come on monkey, monkey 10, big monkey", this evidence is not only unspecific and vague, but it is comprised of hearsay which is not sufficient to defeat a motion for summary judgment.  See Philbin v. Trans Union Corp., 101 F.3d 957, 961 n. 1 (3d Cir.1996) (finding that hearsay statements by unknown individuals are not admissible at trial and may not be considered on a motion for summary judgment). Plaintiff has not provided the names of any people with whom he spoke, let alone affidavits, certifications or testimony. Thus, although the Court is sympathetic that these statements may be offensive to Plaintiff, as evidence, they stand alone as bare conjecture.  Moreover, Plaintiff concedes that "mon-ke" is commonly understood to be a  race-neutral term when used by casino patrons while gambling. Indeed, Plaintiff submits that he is less concerned with patrons who use the term "mon-ke" than

---

[2]Although defendant argues that Plaintiff has not established that the discrimination was pervasive and regular, the court is satisfied that the use of this term by patrons occurred on regular basis and thus Plaintiff could succeed on the second prong of the Aman test.  In addition, the Court is equally satisfied that Plaintiff was detrimentally affected by the conduct based on his uncontested allegation that he had to take 3 weeks off of work because of the stress.

with customers who do not understand the specific definition of the term and witness its use by Bally's patrons. Johnson Dep. 62-63. In light of the specific context in which Plaintiff was subject to the term "mon-ke," and because Plaintiff has conceded that this word has an additional meaning within the gambling context, Plaintiff's conclusory allegation does not sufficiently demonstrate the level of hostility proscribed by Title VII and is insufficient to withstand Defendant's motion for summary judgment.

In addition, the Court finds that Plaintiff has not established an issue of fact on the fifth prong, respondeat superior liability. An employer may be liable under Title VII for the harassing conduct of third parties if the employer was aware of the conduct and failed to take reasonable remedial action in response. See Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1073-74 (10th Cir.1998). "Liability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action. Thus, if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a [racially] hostile environment and failed to take prompt and adequate remedial action, the employer will be liable." Andrews, 895 F.2d at 1486.

Although the Third Circuit has not spoken on this issue in the context of race discrimination, other federal courts have considered whether an employer may be held liable to its employees for racially discriminatory acts and comments of third parties. For example, in Rosenbloom v. Senior Resource, Inc., the court noted that "[j]ust as in sexual hostile work environment cases, there may be circumstances where an employer can be held liable for the racial hostile work environment created by a third party. In this case, however, there is no evidence [employer] benefitted from [third party's] disruptive behavior or from the racist slurs by

10

its clients. In fact, the record shows [employer] was concerned about both incidents and, in at least one case, took rapid measures to remedy the situation." 974 F.Supp. 738, 744 (D. Minn. 1997).  Similarly, in <u>Williams v. Astra</u>, a sales agent in Sagniaw, Michigan, an area with "long-standing hostility and prejudice against African Americans," argued that his employer was responsible for the racially discriminatory acts of current and potential customers.  68 F.Supp. 2d 29, 31, 34 (D.Mass. 1999).  There, for example, plaintiff alleged that he was subject to racist comments that caused him to fear for his well-being and safety such as statements that African Americans were not welcome in Hemlock, Michigan, that he should not stop there for any reason as his safety would most likely be endangered, and that "'niggers' were not allowed in Bad Axe and. . .that he would be physically harmed if they 'caught him in the area again.'" <u>Id.</u> at 32. Despite the egregious nature of these comments, the <u>Williams</u> court held that the employer was not liable for the racially discriminatory acts of third parties with whom the employer had no affiliation and over whom it had no influence or control.  <u>Id.</u> at 35.

  Conversely, in <u>Galdamez v. Potter</u>, the Ninth Circuit held that an employer may be held liable for the actionable third-party harassment of employees where it ratifies or condones the conduct by failing to investigate and remedy it after learning of the conduct.  415 F.3d 1015, 1022 (9th Cir. 2005).  There, the court held that a reasonable jury could have found that a postmaster experienced a hostile work environment based on her national origin when she was subjected to hostile comments from customers and other residents based on her race, accent and national origin.  <u>Id.</u> at 1023.  Indeed, in <u>Galdamez</u>, the court found that the conduct at issue was both subjectively and objectively severe and pervasive where the postmaster's life was threatened and she was subject to threats that everyone in the town would "'come and kill her' if she

persisted in trying to enforce postal regulations" and that various townspeople would "'not think twice' about 'get[ting] together and killing her.'" Id.

Unlike the discriminatory conduct in Rosenbloom, Astra or Galdamez, in the instant matter, Plaintiff does not contend that his safety and well-being have been threatened. Instead, Plaintiff alleges that he is subject to a hostile work environment based on the use of the word "mon-ke" by third parties. Indeed, while the Court is sympathetic to Plaintiff's understandable discomfort at being subject to such a potentially inflammatory term, Plaintiff himself concedes that the term "mon-ke" has at least two meanings, one of which is race-neutral and specific to gambling. Furthermore, Plaintiff's own testimony reveals that many in the casino industry, including patrons, are familiar with the race-neutral meaning of "mon-ke" and Plaintiff has not suggested that its use was racially motivated. Thus, while this Court is cognizant that under certain circumstances an employer may be liable for the derogatory acts and conduct of third parties, there is no evidence that Bally's could have done more to protect its employees – including Plaintiff – from third party comments that he perceived to be derogatory, and on the facts presented in the instant matter, the Court cannot hold Bally's liable for the discriminatory acts of third parties with whom Bally's has no affiliation and over whom Bally's had no control particularly in light of the fact that the word "mon-ke" has a legitimate use in the context of gambling.

For all these reasons, this Court grants Defendant's Motion for Summary Judgment on the hostile work environment claim.

2. Retaliatory Discharge

In addition to a hostile work environment claim, Plaintiff alleges that he was unlawfully discharged from his job as a casino dealer on October 18, 2002, as a result of the complaints he filed with Bally's Labor Relations Department between May 24, 2002 and September 27, 2002. To establish a prima facie case for retaliatory discharge, a plaintiff must show: (1) that she was engaged in protected activity; (2) that she was discharged subsequent to or contemporaneously with such activity; and (3) that a causal link exists between the protected activity and the discharge. Aman, 85 F.3d at 1085; Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989). If a plaintiff is able to establish these elements of his/her prima facie case, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir.1997). If the employer satisfies that burden, the plaintiff must then prove that "retaliatory animus played a role in the employer's decision-making process and that it had a determinative effect on the outcome of that process." Id. at 501.

Thus, in proving a claim for retaliatory discharge, this Court must first determine whether Plaintiff engaged in any protected activity when he complained to Bally's about his working conditions. With respect to the first element of a prima facie case of retaliatory discharge, the language of Title VII explains what constitutes a "protected activity." Specifically, § 704(a) forbids an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."42 U .S.C. § 2000e-3(a). The phrase "this subchapter" refers specifically to 42 U.S.C. §§ 2000e through 2000e-17, which contain the provisions regarding an

employee's rights when an employer has discriminated against him or her on the basis of race, color, sex, religion, or national origin. See Slagle v. County of Clarion, 435 F.3d 262, 267 (3d Cir. 2006). Consequently, a charge "under this subchapter" is a charge that alleges discrimination on the basis of one or more of those prohibited grounds.  Under Title VII, a plaintiff must show that his complaints about the conduct amounted to allegations of discrimination on the basis of race, color, sex, religion, national origin, or some other statutorily enumerated basis. Chambers v. Heidelberg USA, 2006 WL 1281308 at *11 (D.N.J. May 5, 2006); Slagle, 435 F.3d at 268. However, "protection from retaliatory discharge is not lost merely because an employee is mistaken on the merits of his or her claim." Slagle, 435 F.3d at 268.  Therefore, once a plaintiff files a facially valid complaint, the plaintiff will be entitled to the broad protections of §704(a).

In the instant matter, Plaintiff contends that the protected activity he engaged in involved the complaints he filed with his employer that alleged a hostile work environment.  The Court agrees.  Specifically, on five occasions, Plaintiff filed complaints with Bally's Labor Relations Department alleging, in relevant part, that casino patrons referred to him as "monkey" and that a supervisor purposefully walked into him.  In addition, Plaintiff complained to a pit manager on at least two occasions that other dealers were subjecting him to unwanted touching.  Moreover, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission stating, "I believe that, in violation of Title VII of the Civil Rights Act of 1964. . .I was subject to the above-cited racial slur, and harassed and discharged in retaliation for having complained about the use of that term."  See Birchmeier Cert., Ex. 5.  Thus, the Court is satisfied that Plaintiff engaged in protected activity sufficient to satisfy the first prong of the test for retaliatory discharge.

Pursuant to the second and third prong(s) of the test for retaliatory discharge, Plaintiff must show that his discharge occurred subsequent to or contemporaneously with the protected activity and must establish a causal link between the protected activity and the discharge. In making this determination, the Third Circuit has generally focused on two indicia: timing and evidence of ongoing antagonism. See Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997); Watkins v. Nabisco Biscuit Company, 224 F.Supp.2d 852, 871 (D.N.J.2002). Although timing alone will rarely provide sufficient prima facie evidence of retaliation, the temporal proximity between an employee's termination and his protected activity may permit an inference of causation where the relatively short interval between the two is "unusually suggestive" of retaliation. See Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir.1997). However, where the timing of an employer's adverse action is, by itself, inconclusive, an employee may demonstrate the requisite causal link by producing circumstantial evidence of "ongoing antagonism" or "retaliatory animus" in the intervening period between his protected activity and the adverse action. See Kachmar, 109 F.3d at 177; Woodson, 109 F.3d at 921.

As noted above, Plaintiff filed five complaints with Bally's labor relations office between late May and late September 2002 and, on at least two occasions, Plaintiff complained to his pit manager that other dealers were subjecting him to unwanted touching. Indeed, despite his numerous complaints to both Bally's employment office and his managers, Plaintiff continued to suffer from the ongoing allegedly antagonistic behavior of casino patrons, his supervisors and his fellow dealers. Moreover, Plaintiff was discharged less than a month after his final complaint to the Labor Relations Office. Thus, the Court is satisfied that Plaintiff has established an issue of

fact regarding the timing of his discharge and a causal link between his activity and the discharge.

However, this is not the end of the inquiry.  If a plaintiff succeeds in establishing all three elements, the burden shifts to the defendant to advance a legitimate, nondiscriminatory reason for making the adverse employment decision. Once the defendant has proffered such a reason, the plaintiff must raise an issue of fact regarding whether the defendant's proffered explanation is pretextual or whether retaliatory discrimination was more likely than not a determinative factor in the decision. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994); see Woodson,109 F.3d at 920 n. 2 (3d Cir.1997); Sheridan, 100 F.3d 1061; Jalil, 873 F.2d at 708.

In the instant matter, Bally's contends that Plaintiff was fired for making threatening remarks to Frank Campbell, a fellow employee; in other words, Bally's argues that it had a legitimate non-retaliatory reason for Plaintiff's discharge.  Plaintiff, does not dispute that he spoke with Campbell; however, Plaintiff contends that the misconduct charge is pretextual.  The Court agrees and finds that there is a genuine issue of material fact regarding Plaintiff's allegation that the charge of misconduct was pretextual.

To begin, the Court notes that Plaintiff's fifth complaint was filed on September 27, 2002.  Less than three weeks later, Campbell filed his two complaints regarding Plaintiff's threatening behavior.  Plaintiff was initially suspended on October 17, 2002 pending an investigation into Campbell's allegations.  However, Plaintiff was discharged the following day, October 18, 2002.  Thus, the Court notes that the speed with which Plaintiff was discharged following Campbell's allegations is highly suspicious.  Further, the record does not establish the scope of the investigation into Plaintiff's alleged misconduct, and the Court questions whether a

substantial investigation could have been undertaken since Campbell filed his second complaint on October 17 and Plaintiff was suspended and discharged the following day.  Further, the Court is troubled by the findings of the Unemployment Division which determined that Plaintiff was eligible for benefits and explained, "[t]here is no evidence that your actions constitute a wilful and deliberate disregard of behavior your employer had a right to expect. Therefore, your discharge was not for misconduct connected with the work."  Pl.'s Ex. I.

Finally, this Court has considered Plaintiff's circumstantial evidence including: (1) an allegation that Campbell's notation, "Reason why I'm writing this statement is that I felt very threatened" was added after Plaintiff was terminated; and (2) that Reyes' statement was dated two days after Plaintiff was terminated.  Indeed, Defendant did not address this evidence at all.  Thus, this Court finds that there are significant issues of material fact that preclude Bally's Motion for Summary Judgment on Plaintiff's claim for retaliatory discharge.

### IV. Conclusion

For the reasons stated herein, this Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's Hostile Work Environment Claim and DENIES Defendant's Motion for Summary Judgment on Plaintiff's Claim for Retaliatory Discharge.  An appropriate order will follow.

Dated: June 12, 2006                          /s/ Freda L. Wolfson
                                              The Honorable Freda L. Wolfson
                                              United States District Judge